**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

| | |
|---|---|
| BOOTHE FARMS, INC.; BIG RISK FARMS, INC.; JEFFREY D. BOOTHE; TERRY BOOTHE; ADAM BOOTHE; RINEHART FAMILY FARMS II; MM FAMILY FARMS; and WILLIAM J. DORE; individually and on behalf of all those similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE DOW CHEMICAL CO.; DOW AGROSCIENCES LLC; CORTEVA, INC.; and E.I. DU PONT DE NEMOURS AND CO.,<br><br>    Defendants. | Case No.: 3:19-cv-00264-DPM |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
PARTIAL MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

On May 5, 2020, the Court granted Defendants' first partial Motion to Dismiss (Doc. 20, the "First Motion") in this case (Doc. 47, the "Order"), dismissing, without prejudice, Louisiana claims, breach of express and implied warranty claims, and a claim under the Arkansas Trade and Deceptive Practices Act. The Court granted Plaintiffs' motion to amend, and on June 19, 2020, Plaintiffs filed an Amended Class Action Complaint (Doc. 54, the "Amended Complaint"). On July 6, 2020, Defendants filed a second partial Motion to Dismiss (Doc. 56, the "Motion"), addressing some of the new allegations Plaintiffs made in the Amended Complaint, re-raising arguments from the First Motion that the Order did not specifically address, and raising entirely new issues that Defendants could have (and should have) brought in the First Motion.

## I.      INTRODUCTION

Plaintiffs are rice farmers in three of the largest rice-producing states in the country, and their profitability depends in part on the volume of rice produced from each acre of their operations. If grass or other weeds occupy space in their rice fields, the amount of rice they are able to harvest is diminished and their profits are reduced. Similarly, if the rice plants are damaged and produce less rice seed or none at all, their yields are reduced also causing damage. Defendants are agro-chemical companies who have developed and sold herbicides for decades to purportedly enable farmers to control the grasses and weeds that grow in their fields without harming, damaging, or killing farmers' rice plants. To that end, in 2016, Defendants began touting Loyant, an herbicide Defendants marketed as providing broad-spectrum weed control on a range of grasses, broadleaves, sedges, and aquatics, and that Defendants affirmatively represented did not harm rice crops. Relying on Defendants' representations about Loyant, Plaintiffs purchased Loyant to apply to their rice crops, but it did not perform as it was described. Loyant did not control the grass and weeds in Plaintiffs' rice fields, damaged Plaintiffs' rice plants, and reduced their yield, causing Plaintiffs and the class financial harm.  In September 2019, Plaintiffs brought this case, alleging Defendants' negligent and wrongful conduct in connection with the research, development, and promotion of Loyant herbicide for use on rice crops caused them significant damages.

Defendants have moved once again to dismiss a number of Plaintiffs' claims, specifically Arkansas and Missouri Plaintiffs' ("Boothe Farms" and "Rinehart Farms," respectively) claims for breach of express and implied warranties (Counts I and II), Rinehart Farms' claim that Defendants violated the Missouri Crop Protection Act, Mo. Stat. § 569.132 (the "MCPA") (Count XII), Louisiana Plaintiff's (William J. Dore, "Dore Farms") redhibition claim (Count X), Dore Farms' claim under the Louisiana Products Liability Act, LA Rev. Stat. Ann. §§ 9:2800.51, *et seq.*

(the "LPLA") (Count XI), and Defendants have challenged Plaintiffs' standing to seek injunctive relief. Defendants have not moved to dismiss Count III, negligence; Count IV, negligent design; Count V, negligent failure to warn; Count VI, strict liability (design defect); or Count VII, strict liability (failure to warn), and those claims will proceed to discovery regardless of the Court's ruling on this Motion. Contrary to Defendants' arguments, however, Plaintiffs' claims identified in Defendants' second Motion should also survive.

*First*, Defendants' Motion improperly raises entirely new arguments that were available in its First Motion in violation of Federal Rule of Civil Procedure 12(g)(2), and their arguments as to the MCPA, the LPLA, and that Louisiana law precludes punitive damages should be summarily denied on that basis alone.[1] *See, e.g.*, *NorthStar Battery Co. v. EnXergy, LLC*, No. 6:18-CV-030605-MDH, 2018 WL 5284618, at *1-2 (W.D. Mo. Oct. 24, 2018).

*Second*, and as Plaintiffs argued in their opposition to the First Motion, Boothe Farms and Rinehart Farms adequately pled reliance in compliance with Arkansas Code § 4-2-313 and Missouri Code § 400.2-313. *See, e.g.*, *Currier v. Spencer*, 772 S.W.2d 309, 311-12 (Ark. 1989); *Walcott & Steele, Inc. v. Carpenter*, 436 S.W.2d 820, 822-23 (Ark. 1969); *Turner v. Cent. Hardware Co.*, 186 S.W.2d 603, 608 (Mo. 1945); *Gen. Elec. Capital Corp. v. Rauch*, 970 S.W.2d 348, 353-54 (Mo. Ct. App. 1998).

---

[1] Although Defendants similarly neglected to argue that Plaintiffs lack standing to seek injunctive relief in its First Motion, Plaintiffs note that a lack of subject matter jurisdiction is not one of the defenses waived by omission from an earlier motion. Fed. R. Civ. P. 12(g)(2), 12(h)(3); *Hageman v. Barton*, No. 4:13-CV-2522 (CEJ), 2016 WL 3197295, at *2 (E.D. Mo. June 9, 2016); *Clark v. Iowa State Univ.*, 4:09-CV-370 RP-CFB, 2009 WL 10677892, at *4–5 (S.D. Iowa Dec. 17, 2009). As described more fully herein, however, Plaintiffs do have standing to seek injunctive relief. In the alternative Plaintiffs intend to file a motion seeking leave to amend the Amended Complaint pursuant to the Final Scheduling Order, Doc. 42 at 2.

*Third*, questions of fact remain as to whether each Defendant adequately disclaimed any implied warranties and whether the disclaimer was brought to Plaintiffs' attention at the time of purchase. *See* Ark. Code § 4-2-316(2); Mo. Stat. § 400.2-316(2). *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1081-82 (E.D. Ark. 2013); *Boshears v. Certainteed Corp.*, No. 4:05CV01052-WRW, 2007 WL 1381652, at *3 (E.D. Ark. May 10, 2007); *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 130 (Mo. 2010) (en banc).

*Fourth*, even if the Court does not deny Defendants' Motion as to Plaintiffs' MPCA claim for violating Federal Rule 12(g)(2), Rinehart Farms states a claim for violation of the MCPA. Mo. Stat. § 537.353.1; *In re Dicamba Herbicides Litig.*, 359 F.Supp.3d 711, 742 (E.D. Mo. 2019).

*Fifth*, Dore Farms' claims were timely filed while liberative prescription was suspended in Louisiana. La. C.C. Art. 3492; La. C.C. Art. 2534; La. C.C. Art. 3472; *Failla v. Dynasty Distribs., Inc.*, Civ. A. No. 06-16, 2006 WL 1581217, *2 (E.D. La. June 6, 2006).

*Sixth*, even if the Court does not deny Defendants' Motion as to Plaintiffs' LPLA claim for violating Federal Rule 12(g)(2), Dore Farms sufficiently pled breach of express warranty under the LPLA. La. R.S. §§ 9:2800.53(6), 9:2800.58; *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2002).

*Finally*, Plaintiffs have standing to seek injunctive relief, and in the alternative, Plaintiffs will file a motion for leave to amend the Amended Complaint to clarify any pleading deficiencies. *See, e.g.*, *Henderson v. Gruma Corp.*, No. CV 10-04173 AHM AJWX, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011); *Coe v. Gen. Mills, Inc.*, No. 15-cv-05112-THE, 2017 WL 476407, at *2 (N.D. Cal. Feb. 6, 2017).

## II.   LEGAL STANDARDS

### A.   **12(b)(6).**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (quotations omitted). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Courts must draw all reasonable inferences in favor of the non-moving party, and "[c]omplaints should be liberally construed in the plaintiff's favor and should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *White v. Volkswagen Grp. Of Am., Inc.*, No. 2:11-CV-02243, 2013 WL 685298, at *2 (W.D. Ark. Feb. 25, 2013) (internal quotation marks omitted).

### B.   <u>Article III Standing.</u>

To establish standing to seek injunctive relief, a plaintiff must show that he is threatened with a concrete and particularized injury in fact; the threat is actual and imminent, not conjectural or hypothetical; the threat is fairly traceable to the challenged action of the defendant; and it is likely a favorable decision will prevent or redress the injury. *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1054 (8th Cir. 2018). When defendants make a facial attack on jurisdiction, courts take the factual allegations as true. *Anderson v. SeaWorld Parks & Entm't, Inc.*, No. 15-CV-02172-JSW, 2016 WL 4076097, at *3 (N.D. Cal. Aug. 1, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The facts are then construed in the light most favorable to the plaintiffs. *Id.* (citing *Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996)). Plaintiffs must demonstrate standing separately for each form

of relief sought. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

## III.   ARGUMENT

### A.   Several of Defendants' Arguments Violate Rule 12(g)(2) and Should be Denied.

While Defendants are permitted to challenge Plaintiffs' newly amended allegations for their sufficiency, they are not permitted to contest other issues against which they could have moved in their First Motion. In particular, Rule 12(g)(2) prohibits a party who makes a Rule 12 motion—as Defendants already did here in November 2019—from "mak[ing] another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). That is because "it is a waste of judicial resources to consider motion after motion in which defendants raise the same [Rule 12(b)(6)] defense over and over, each time testing a new argument." *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 3041090, at *5 (N.D. Cal. Oct. 24, 2006) (quoting *Sprint Telephony PCS, L.P. v. Cty. of San Diego*, 311 F. Supp. 2d 898, 905 (S.D. Cal. 2004)); *NorthStar Battery Co.*, 2018 WL 5284618, at *1-2 (defendant's second motion to dismiss, although filed after an amended complaint, raised arguments that were available in its earlier motion, which were therefore  precluded under Rule 12(g)(2)). "Allowing such a tactic means that defendants potentially could stall litigation indefinitely as long as they can conjure up a new argument on which to base a failure to state a claim defense." *Siemers*, 2006 WL 3041090, at *5 (quoting *Sprint*, 311 F. Supp. 2d at 905). As a result, and as numerous courts and other authorities have explained, Rule 12(g)(2) requires that Defendants' new Motion as to these particular arguments be denied. *E.g., Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 247 F. Supp. 2d 987, 999 (N.D. Ill. 2002) (defendants precluded from asserting new Rule 12(b)(6) arguments in a successive motion when they failed to do so in

an initial motion); *Arcadia Aviation PHF, LLC v. Aero-Smith, Inc.*, No. 12 CIV. 6177 (PAC), 2013 WL 3717651, at *4 (S.D.N.Y. July 16, 2013) ("Defendant's Supplemental Motion is denied because Aero-Smith has waived its right to move for dismissal under Rule 12(b)(6) . . . "); *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 321 (3d Cir. 2015) (holding that it was "improper to consider" defendants' second motion to dismiss, and that "[t]he District Court's conclusion to the contrary was error."); Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1384 (3d ed. updated April 2018) ("Any defense that is available at the time of the original motion, but is not included, may not be the basis of a second pre-answer motion.").

Defendants flaunt this clear prohibition without even bothering to cite the applicable rule, much less offering any reason why it should not apply (nor should they be permitted to do so for the first time on reply).[2] Here, Defendants go far beyond contesting only the amended allegations and raise entirely new arguments that they strategically chose not to include in their First Motion, including: a) the Louisiana express warranty claim under the LPLA fails, Mot. at 9-11; b) Louisiana law precludes punitive damages, Mot. at 11; and c) Plaintiffs fail to allege conduct that violates the MCPA. Mot. at 15-18.[3]   The Motion as to these claims should be summarily denied as these were filed in violation of Rule 12(g)(2).

---

[2] *See, e.g.*, *United States v. Peacock,* 256 Fed. Appx. 9, 11 n.2 (8th Cir. 2007) (per curiam) ("[A]n argument not raised in an opening brief is considered waived."); *United States v. Darden,* 70 F.3d 1507, 1549 n. 18 (8th Cir. 1995) (explaining that parties "generally must raise and brief all issues in their opening brief."); *Estate of Rick ex rel. Rick v. Stevens*, No. C 00-4144-MWB, 2001 WL 34008709, at *6 (N.D. Iowa July 18, 2001) ("It is well established that issues not raised in an opening brief cannot be raised for the first time in a reply brief." (citing *United States v. Vincent*, 167 F.3d 428, 432 (8th Cir. 1999), *cert. denied*, 528 U.S. 848 (1999)).

[3] Defendants also re-raise arguments they previously brought in their First Motion to dismiss, but which the Court did not explicitly address in its Order: 1) The express warranty claims fail to adequately plead reliance, Mot. at 12-14; and 2) The implied warranty claims fail because the label disclaimed implied warranties. Mot. at 14-15.

The narrow exception to Rule 12(g)(2) embodied in Rule 12(h)(2) for certain defenses, including failure to state a claim, does not change the result. As the court in *East Coast Test Prep LLC v. Allnurses.com, Inc.* explained, under Rule 12(g)(2), "a party who files a Rule 12 motion without raising a failure-to-state-a-claim defense gives up their opportunity to raise that defense prior to the closing of the pleadings," with the Rule 12(h)(2) exception merely operating to preserve "the right to present the defense later . . . in a pleading, a Rule 12 motion for judgment on the pleadings, or at trial." No. Civ. 15-3705 (JRT/JSM), 2016 WL 5109137, at *2 (D. Minn. Sept. 19, 2016). *See also Arcadia Aviation*, 2013 WL 3717651, at *4 ("Though a defendant may still defend itself by arguing that a plaintiff has failed to state a claim upon which relief can be granted after already having moved to dismiss a case under Rule 12, it may only do so in a 'pleading allowed or ordered under Rule 7(a); by a motion under Rule 12(c); or at trial.' None of these exceptions apply to Defendant's Supplemental Motion.") (quoting Fed. R. Civ. P. 12(h)(2)). Defendants' Motion does not fall into any of the Rule 12(h)(2) categories—it is not a pleading, nor a motion for judgment on the pleadings, nor are the parties close to trial. Accordingly, the exceptions in Rule 12(h)(2) cannot prevent the operation of Rule 12(g)(2) here.

Nor can Defendants ask the Court to exercise discretion so that Rule 12(g)(2)'s dictates may be avoided--the rule is mandatory and does not permit discretion. *E.g., East Coast Test Prep LLC*, 2016 WL 5109137, at *2 ("The Court also notes that even though adherence to Rule 12's formalities may appear to be nothing more than annoyance here, the Court must still follow the rule's dictates [and a] district court errs if it considers an improper successive Rule 12 motion"); *Leyse*, 804 F.3d at 322 n.5 ("We emphasize that district courts should enforce Rule 12(g)(2) even if their failure to do so is not a ground for reversal."); *CGL, LLC v. Schwab*, Civ. A. No. 11-04593, 2012 WL 4321972, at *3-4 (E.D. Pa. Sept. 21, 2012) (quoting *Wartsila NSD N. Am., Inc. v. Hill*

*Int'l, Inc.*, No. 99-cv-4565, 2004 U.S. Dist. LEXIS 28921, at *14-15 (D.N.J. June 22, 2004)) (noting that while "[i]t may at times appear overly formalistic for a court to disallow a 12(b)(6) motion only to entertain a motion for Summary Judgment or a 12(c) motion on the pleadings," permitting successive 12(b)(6) motions "would vitiate the purpose behind Rule 12(g).") Furthermore, "[w]hen the Federal Rules govern, it is neither up to the parties nor up to this Court to determine what makes the best procedural sense." *Chen v. Cayman Arts, Inc.*, No. 10-80236-CIV, 2011 WL 1085646, at *2 (S.D. Fla. Mar. 21, 2011).

Given Rule 12(g)(2)'s unambiguous—and unavoidable—mandate, the Court should deny Defendants' second Motion to dismiss as to arguments II.B., II.C., and IV. on procedural grounds. If the Court declines to do so, the MCPA and LPLA Counts should fail on their merits as detailed *infra*, as well.

### B.   <u>Boothe Farms and Rinehart Farms Adequately Pled Breach Warranty.</u>

Boothe Farms and Rinehart Farms adequately pled breaches of express and implied warranty. Because Plaintiffs can clearly point to the allegations in the Amended Complaint that Defendants made particular affirmations about how Loyant would perform, and that they specifically relied on the Defendants' representations regarding Loyant, purchasing the product ***because of those representations***, Defendants' argument to dismiss Plaintiffs' claim for breach of express warranty must fail. Similarly, questions of fact remain as to whether Plaintiffs saw Loyant's disclaimer and to which Defendants it applies, and so the breach of implied warranty claim should survive Defendants' Motion.

#### 1.   *Boothe Farms and Rinehart Farms Adequately Pled Reliance.*

In both Arkansas and Missouri, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express

warranty that the goods shall conform to the affirmation or promise," and "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Ark. Code § 4-2-313(1)(a),(b); Mo. Stat. § 400.2-313 (1)(a),(b); *Currier*, 772 S.W.2d at 311 (express warranty created when seller told buyer he was purchasing a "one owner 1984 Datsun" and breached when what the plaintiff purchased instead "was two-thirds of one car and one third of another" car that had *two* previous owners); *Turner*, 186 S.W.2d at 608 (there was "a positive representation or affirmation of fact with respect to a latent defect, an express warranty that the ladder was safe and sound, reliance upon the warranty by the purchaser," and a breach where plaintiff relied upon the salesperson's judgment as to the quality of the ladder's wood and purchased the ladder that later collapsed during use).

In Arkansas, a plaintiff who alleges a defendant "stated on its products' labels and in its advertisements" that its products perform in a certain way, that  the plaintiff relied on those representations in making his purchase, and that the products do not perform as represented "sufficient[ly] state[s] a claim for breach of express warranty under Arkansas law." *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1341 (S.D. Fla. 2013) (interpreting Arkansas law in a national class action); *Gabriele v. ConAgra Foods, Inc.*, No. 5:14-CV-05183, 2015 WL 3904386, at *8 (W.D. Ark. June 25, 2015) (product labels stating product was "100% natural" and free of artificial ingredients created an express warranty when plaintiff relied upon them in purchasing the product). Any questions as to whether advertisements, affirmations, or statements made by a defendant were a basis for an express warranty should be submitted to the jury to decide. *Little Rock Sch. Dist. of Pulaski Cty. v. Celotex Corp.*, 574 S.W.2d 669, 673–74 (Ark. 1978), *on reh'g sub nom. Little Rock Sch. Dist. of Pulaski Cty. v. Matson, Inc.*, 576 S.W.2d 709 (Ark. 1979) (trial court erred in directing a verdict on the issue of express warranty

when questions of fact merited submitting the issue to the jury after plaintiff made a *prima facie* case).

Similarly, under Missouri law, "[a] brochure, catalogue or advertisement may constitute an express warranty." *Interco Inc. v. Randustrial Corp.*, 533 S.W.2d 257, 261-62 (Mo. App. 1976). In Missouri, a representation must have been material to a consumer's purchasing decision and induced the purchasing decision, although courts have not "expressly interpreted" that to require "'reliance' in the strict meaning of that word." *Johnson v. Atkins Nutritionals, Inc.*, No. 2:16-CV-04213-MDH, 2018 WL 3398162, at *5 (W.D. Mo. July 12, 2018) (granting defendant's summary judgment motion because plaintiff, unlike Plaintiffs here, admitted he did not read the labels and thus they could not have induced him to purchase the product). But, the consumer must "be able to demonstrate that he was at least *aware* of the representation, such that he could have relied upon it in making a decision." *Id.* (citing *Hope v. Nissan N.A., Inc.*, 353 S.W.3d 68, 86 (Mo. Ct. App. 2011) and *Interco, Inc.*, 533 S.W.2d at 362); *Power Soak Sys., Inc. v. Emco Holdings, Inc.*, 482 F. Supp. 2d 1125, 1134 (W.D. Mo. 2007) (plaintiff's lack of reliance did not defeat warranty claim).

Here, Defendants' argument that Plaintiffs failed to allege any express warranty by Defendants influenced their decision to purchase Loyant fails: The Amended Complaint alleges in detail that Defendants made numerous affirmations of fact about Loyant *and* that Plaintiffs relied on those statements.

### i.    Plaintiffs adequately alleged Defendants made affirmations of fact and promises about Loyant.

First, Plaintiffs describe the massive advertising and promotional campaign Defendants engaged in, specifically enumerating the written materials, websites, press releases, presentations to farmers and sales representatives, a March 2016 pamphlet titled *Levee Talk*, statements made by Defendant Dow representatives to farmers, *including Plaintiffs*, information presented on

Loyant's Technical Data Sheet and product label, and information disseminated on Defendant Corteva's twitter account and Agriscience website that Defendants used to describe and promote Loyant even before it was available to purchase. Am. Compl. at ¶¶ 33-46, 66, 79, 114, 117, 118, 120. Defendants' affirmations and descriptions of Loyant included promises that Loyant "effectively controls weeds, such as barnyardgrass, and does not impact yields or harm rice crops," rice is "tolerant to Loyant in medium- and long-grain varieties and hybrids," Loyant provides "unmatched . . . control" over weeds, and any injury to rice crops occurs only under certain "adverse environmental conditions" and only on a "temporary" basis. *Id.* Additionally, Plaintiffs alleged Defendant Dow represented that Loyant would lower use rates; any crop effects such as height reduction or leaf malformation would be temporary and have no effect on yield; Loyant would control susceptible weeds emerged at the time of application; Loyant is tolerant in long and medium grain rice and hybrid varieties; Loyant provides "unmatched broadleaf, grass, sedge and aquatic weed control to rice growers;" and Loyant "can be used in a manner that will not damage rice crops and 'exhibits excellent crop tolerance in rice.'" *Id.* at ¶ 118. As Boothe Farms and Rinehart Farms learned to their detriment after purchasing Loyant for the explicit purpose, consistent with Defendants' affirmations, "to control the grass and weeds in their fields," none of those affirmations about or descriptions of Loyant proved true. Am. Compl. at ¶¶ 66, 79.

### ii.   **Plaintiffs adequately alleged they relied on the affirmations of fact and promises Defendants made about Loyant.**

Second, both Boothe Farms and Rinehart Farms adequately pled that they relied on Defendants' representations when they decided to purchase Loyant. Plaintiffs allege that Boothe Farms and Rinehart Farms purchased Loyant for use on their rice farm for the 2018 crop year "to control the grass and weeds in their fields ***and because of*** Dow's representations regarding Loyant, including those laid out above." Am. Compl. at ¶¶ 66, 79 (emphasis added). Both Plaintiffs also

12

allege, "Dow's representations were made for the purpose of inducing reliance on the part of Plaintiffs and ***Plaintiffs did rely on the representations in purchasing Loyant***. Am. Compl. at ¶ 120 (emphasis added). Plaintiffs adequately pled these representations became part of the basis of the bargain because they described the exact purpose for which Boothe Farms and Rinehart Farms needed a product like Loyant, and that "because of" the description of its purpose, they purchased Loyant. *See* Am. Compl. at ¶¶ 66, 79, 114, 120.

In their Motion, Defendants rely on cases where plaintiffs (unlike Boothe Farms and Rinehart Farms) failed to claim that any representations influenced their decision to purchase a product, or that the representations became a basis of the bargain. These cases are therefore easily distinguishable.[4] Despite Defendants' averment that "the Arkansas and Missouri Plaintiffs do not allege that they were aware of any statement by Defendants regarding Loyant aside from the Label itself," Mot. at 13, Plaintiffs laid out a detailed description of the many representations made by

---

[4] Mot. at 12-13 (citing *Madden v. Mercedes-Benz USA, Inc.*, 481 S.W.3d 455, 463 (Ark. Ct. App. 2016) (plaintiff failed to allege that she relied upon oral testimony outside of the written sales agreement in her complaint), *Brooks v. Remington Arms Co.*, No. 1:09-CV-01054, 2010 WL 6971894, at *4 (W.D. Ark. Oct. 27, 2010) (in addition to failing to plead reliance on representations made by the defendant, plaintiffs failed to even allege that their rifles manifested the defect at issue, so they could not plead damages), *Singleton v. Arkansas Hous. Auths. Prop. & Cas. Self-Insured Fund, Inc.*, No. 4:15-C-205-KGB, 2018 WL 1588022 at *5 (E.D. Ark. Mar. 31, 2018) (holding that plaintiffs' claims failed because they did not produce proof of a product defect, an essential element of their claim, not because they failed to plead reliance), *Gannon Joint Venture Ltd. P'ship v. Masonite Corp.*, No. 4:07CV1242 JCH, 2008 WL 2074107, at *2 (E.D. Mo. May 14, 2008) (plaintiff admitted they received no written warranty at the time of purchase and only searched for and read warranty information *after* the defect had manifested), *Gillan v. Wright Med. Tech. Inc.*, 396 F. Supp. 3d 844, 849 (E.D. Mo. 2019) (although the defendant had produced brochures, catalogues, and advertisements about the product, plaintiff failed to allege that any of those statements were made to him or to his doctor, or that they constituted a material factor inducing his purchase), *BPA Polycarbonate Plastic Prods. Litig.*, 687 F. Supp. 2d 897, 905 (W.D. Mo. 2009) (plaintiffs failed to identify any expressions made by the defendants to them about the products and confirmed in their response motion that they were not relying on particular representations to support their claim)). In contrast, Boothe Farms and Rinehart Farms clearly allege that Defendants' affirmations were the reason they purchased Loyant.

Defendants about Loyant and allege they did rely on the representations when they purchased Loyant. Am. Compl. at ¶¶ 33-46, 66, 79, 114, 117-120. Further, according to Defendants, Plaintiffs' "only allegation of reliance relates to events that occurred *after* purchasing the product—namely, that, once they observed 'height reductions and/or leaf malformations' to rice plants, [Plaintiffs] trusted the language in the label that these issues are 'transient and do not effect yield.'" Mot. at 13. While it is certainly true that Plaintiffs made this allegation and they could not do anything but trust Defendants' promises that the harm Loyant was causing would only be temporary, this is *not* the "only" allegation of reliance detailed in the complaint. *E.g.*, Am. Comp. at ¶¶ 33-46, 66, 79, 114, 117-120. Finally, while Defendants claim  that the Amended Complaint contains only one "threadbare recital of [the] element" of reliance, Mot. at 13-14, the robust description of Defendants' affirmations of fact about Loyant, which Boothe Farms and Rinehart Farms clearly state that they relied on and which induced them to purchase the product, rebut this claim.

Boothe Farms and Rinehart Farms have adequately pled Defendants created an express warranty, they relied on the express warranty in purchasing Loyant, and the Defendants breached the express warranty under both Arkansas and Missouri law, meeting the standard to survive a motion to dismiss.

## 2. *Defendants' Disclaimer Does Not Defeat Plaintiffs' Claim for Breach of Implied Warranty.*

Despite Defendants' arguments that they effectively disclaimed all implied warranties, Boothe Farms' and Rinehart Farms' claims for breach of implied warranty should stand. An implied warranty arises by operation of law when a purchaser and merchant enter into an agreement unless the warranty is *effectively* disclaimed. *Boshears v. Certainteed Corp.*, No. 4:05CV01052-WRW, 2007 WL 1381652, at *3 (E.D. Ark. May 10, 2007); *Renaissance Leasing,*

*LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 129-30 (Mo. 2010) (en banc). In both Arkansas and Missouri, disclaiming warranties is governed by each state's statute incorporating the Uniform Commercial Code. Ark. Code. § 4-2-316(2); Mo. Stat. § 400.2-316(2). The disclaimer clause must be "conspicuous so that a reasonable person could notice it, and it must be brought to the attention of the buyer at the time of the sale." *Boshears*, 2007 WL 1381652, at *3, *id.* at *5 (plaintiff did not see a warranty until two years after the product was purchased, despite defendant's assertion it was given to the roofing company that installed the product on plaintiffs' home at the time of purchase). Although conspicuousness[5] is a matter of law for the court to decide, *Day v. Tri-State Delta Chemicals, Inc.*, 165 F. Supp. 2d 830, 836 (E.D. Ark. 2001), it is up to the jury to decide if proper notice of the disclaimer was given at the time of the purchase. *Boshears*, 2007 WL 1381652, at *3. In *Boshears*, there was a genuine question of fact as to whether plaintiffs saw the warranty at issue at the time of purchase, and the version of the warranty that plaintiffs eventually saw had been since amended, so the court denied defendant's motion to dismiss. *Id.* at *5. Moreover, even where one party effectively disclaims an implied warranty, that disclaimer may not be applicable to all parties in the chain of distribution. *See Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1081-82 (E.D. Ark. 2013). In *Jarrett*, the owner's manual that accompanied the television plaintiff purchased effectively disclaimed the implied warranties for the *manufacturer*, but not the seller, which did not provide its own disclaimer. *Id.* at 1081.

In the Amended Complaint, Plaintiffs effectively pled that Loyant was not in merchantable condition and was not fit for its ordinary purpose as a herbicide to combat the growth of grass and weeds in rice fields. Am. Compl. at ¶¶ 125-132. Here, the disclaimer is buried on the last page of a 16-page label: there remains a genuine question of fact as to whether Plaintiffs saw the disclaimer

---

[5] Ark. Code. § 4-1-201; Mo. Stat. § 400.1-201.

or whether it was properly given at the time of purchase. *See* Mot., Ex. 1 at 16. Additionally, at this stage of the case, questions of fact remain about Defendants' individual relationships and responsibilities as to the manufacturing, marketing, and sale of Loyant. Which Defendant placed the disclaimer on Loyant's label, whether the disclaimer applies to every Defendant, and if the disclaimer runs with the goods to each Defendant from whom each Plaintiff purchased Loyant are all questions for the jury. At this early stage, Defendants' argument that Plaintiffs' breach of implied warranty claim fails should be denied.

### C.   Rinehart Farms States a Claim for Violation of the Missouri Crop Protection Act.

Rinehart Farms properly alleged a violation of the MCPA. In Missouri, when a statute is clear and unambiguous "[c]ourts are without authority to read into a statute a legislative intent contrary to the intent made evident by the plain language." *Kearney Special Road Dist. v. Cty. of Clay*, 863 S.W.2d 841, 842 (Mo. 1993) (en banc). The plain language of the statute as written must be given effect and "[a] court may not add words by implication to a statute that is clear and unambiguous." *State ex rel. Young v. Wood*, 254 S.W.3d 871, 872-873 (Mo. 2008) (en banc) (quoting *Asbury v. Lombardi*, 846 S.W.2d 196, 202 n. 9 (Mo. 1993) (en banc)).

The Missouri Crop Protection Act prohibits, among other things, intentionally causing crop loss. Mo. Stat. § 569.132.2(1). A violation of the MCPA affords an injured party a civil remedy pursuant to sections 537.353 and 569.132.4, while section 537.353.1 imposes liability for generally injuring crops on "[a]ny person or entity who knowingly damages or destroys any field crop product that is grown for personal or commercial purpose." Mo. Stat. § 537.353.1. Negligently damaging or destroying field crops also subjects any responsible person or entity to liability. Mo. Stat. § 537.353.2.

Defendants suggest that these statutes require direct physical interference in damaging or destroying crops despite the fact that the statutory language makes no reference to direct physical interference as a requirement in either Mo. Stat. § 569.132.2(1) or  § 537.353. The language of section 569.132.2(1) – which provides a cause of action under  section 537.353 – does not say directly or physically damage but "[i]ntentionally causes." The word cause is not mere "idle verbiage or superfluous language." *State ex rel. Goldsworthy v. Kanatzar*, 543 S.W.3d 582, 586 (Mo. 2018) (en banc) (quoting *Civil Serv. Comm'n of City of St. Louis v. Members of Bd. of the Aldermen of City of St. Louis*, 92 S.W.3d 785, 788 (Mo. 2003) (en banc)). There is no statutory definition of cause so the dictionary meaning applies. *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 (Mo. 2018) (en banc). Cause is: (a) "a reason for an action or condition," (b) "something that brings about an effect or a result," (c) "a person or thing that is the occasion of an action or state," and/or (d) "sufficient reason." Merriam Webster online dictionary, https://www.merriam-webster.com/dictionary/cause (last visited Aug. 5, 2020).

There is no need to resort to inapplicable trespass decisions as Defendants have done because there is a Missouri case on point. The plaintiffs in the *Dicamba Herbicides Litigation* asserted claims based on violations of the MCPA. 359 F. Supp. 3d at 742. The plaintiffs in *Dicamba* did not allege direct physical interference resulting in crop loss but that the defendants "did cause loss of and damage to field crops . . . knowingly and intentionally for the purpose of escalating purchases of dicamba-resistant seed and herbicide for their own financial gain" and "negligently damaged field crops." *Id*. The court found the allegations were enough to state a cause of action and the motion to dismiss was denied as to the MCPA count. *Id*. The result should be the same in this case because Rinehart Farms pled that Defendants caused the crop damage at issue in an analogous fashion. Am. Compl. at ¶¶ 190-191.

17

### D.     Dore Farms' Case was Timely Filed.

Dore Farms' case was filed within the one-year prescriptive period under Louisiana law.

Actions sounding in tort seeking damages for injury caused by the acts or omissions of another are

governed by a one-year liberative prescriptive period in Louisiana. La. C.C. Art. 3492. A claim

for redhibition "against a seller who knew, or is presumed to have known, of the existence of a

defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer."

La. C.C. Art. 2534. If prescription is suspended, then the term of suspension does not count, and

prescription begins to run again after the suspension ends. La. C.C. Art. 3472.

On March 16, 2020, the Governor of Louisiana, John Bel Edwards, entered Proclamation

Number JBE 2020 – 30, suspending legal deadlines including liberative prescription periods from

March 17, 2020, through April 13, 2020. Pls.' Ex. 1, Proclamation No. JBE 2020-30 (Mar. 16,

2020). The liberative prescription suspension was extended multiple times through July 5, 2020.

*Id.* Act 162 codified the suspension of liberative prescription such that if the prescriptive period

would have expired between March 17, 2020, and July 5, 2020, then a pleading or motion to

enforce any right, claim, or action was timely as long as filed on or before July 6, 2020. Pls.' Ex.

2, H.B. No. 805, 2020 Reg. Sess. (La. 2020) ("Act 162"). In addressing a similar statute enacted

after Hurricanes Katrina and Rita allowing for a limited suspension and/or extension from August

26, 2005, through January 3, 2006, a motion to dismiss was denied when, "According to the

complaint Harvey completed its work on Failla's property in early September 2004. One year from

that date would fall squarely within the time frame addressed by section 5822(A), supra. Failla

filed the instant suit on January 3, 2006. His claims are therefore timely." *Failla v. Dynasty*

*Distribs., Inc.*, 2006 WL 1581217, *2 (E.D. La. June 6, 2006).

The Amended Complaint was filed on June 19, 2020. Am. Compl. Liberative prescription was suspended in Louisiana from March 17, 2020, through July 5, 2020. Defendants mistakenly rely on what Dore Farms knew or should have known by June 19, 2019, when the appropriate question is what was known by March 17, 2019. There has been no evidence presented that Dore Farms sustained damages related to Loyant let alone had actual or constructive knowledge of the tortious act, the damage, and the causal relation between the tortious act and the damage before March 17, 2019, as would be required to find Dore Farms' causes of action facially prescribed.

Defendants cannot meet that burden because Dore Farms did not plant the rice acreage where Loyant was later applied until on or about May 14, 2019. Moreover, the relevant United States Department of Agriculture Louisiana Crop Progress and Condition report confirms that only 6% of rice had been planted in Louisiana and no rice had emerged by the week ending March 17, 2019. Pls.' Ex. 3, USDA, Louisiana Crop Progress and Condition Report (Mar. 18, 2019). Loyant is a postemergence herbicide applied when rice and weeds are actively growing so rice must be both planted and emerged prior to Loyant application—neither of which had occurred for the Dore Farms on March 17, 2019. Dore Farms' claims are not prescribed because the Amended Complaint was timely filed while liberative prescription was suspended in Louisiana and Defendants' argument as to this claim should be denied.

E.    **Plaintiffs Sufficiently Pled Breach of Express Warranty Under the Louisiana Products Liability Act.**

Dore Farms sufficiently pled all elements of breach of express warranty under the LPLA. A product can be unreasonably dangerous according to the LPLA due to nonconformity with an express warranty. La. R.S. § 9:2800.54(B)(4). The LPLA defines an "express warranty" as "a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or

workmanship possesses specified characteristics or qualities or will meet a specified level of performance." La. R.S. § 9:2800.53(6). An LPLA breach of express warranty claim has the following components: (1) an express warranty made by the manufacturer about the product; (2) the plaintiff was persuaded to use the product based on the express warranty; and (3) damage was proximately caused to the plaintiff because the express warranty was untrue. La. R.S. § 9:2800.58; *Caboni*, 278 F.3d at 452.

Defendants attempt to convince this Court that the allegations of Count XI of the Amended Complaint related to the LPLA should be read in a vacuum. It is clear from the totality of the Amended Complaint that Dore Farms has asserted a viable breach of express warranty claim. The Amended Complaint has an entire section devoted to "Dow's Representations about Loyant" which are specifically incorporated into Count XI. Am. Compl. at ¶¶ 33-62, 176. In particular, "[t]hrough written materials, websites, press releases, farmer presentations, and sales representatives, Dow widely touted and continues to proclaim that Loyant effectively controls weeds, such as bamyardgrass, and does not impact yields or harm rice crops. These representations were false." *Id.* at ¶ 33. The warranties included that Loyant would lower use rates; that crop effects would be temporary and have no effect on yield; that weeds emerged at the time of application would be controlled; that long and medium grain varieties of rice and hybrids would be tolerant; that broadleaf, grass, sedge, and aquatic weed control would be unmatched; and that rice crops would not be damaged. *Id.* at ¶¶ 33-46. Dore Farms relied on Defendants' statements regarding Loyant in purchasing the product and sustained damages in the form of injury to the rice crop because the statements were not true. *Id.* at ¶¶ 181 & 184.

Like in *Baudin v. AstraZeneca Pharmaceuticals LP*, *Robertson v. AstraZeneca Pharmaceuticals, LP* is distinguishable,

> Plaintiff accompanied his plea of an express warranty that [the product] was 'safe and well accepted by users' with allegations that [the product] failed to conform to these representations, specific allegations of the side effects of [the product] that made it unsafe and unacceptable, and details allegations of the correlation between [the product] and [the injury].

413 F.Supp. 3d 498, 510-512 (M.D. La. 2019); No. 15-438, 2015 WL 5823326, at *5 (E.D. La. Oct. 6, 2015).

In *King v. Bayer Pharmaceuticals Corp.*, the court similarly held that generally asserting that the manufacturer warranted the product "was safe and effective as clinically tested and was of merchantable quality and fit for the use for which the drug was intended" stated a cause of action for breach of express warranty under the LPLA. Civ. A. No. 09-0465, 2009 WL 2135223, *5 (W.D. La. July 13, 2009). Dore Farms has provided the content of the express warranties made by Defendants, explained how the warranties were inaccurate, and described the effects of the breach of the warranties in great detail. The allegations of breach of express warranty are plainly set forth in the Amended Complaint and form the basis for an adequate claim under the LPLA.

   **F.    Plaintiffs Have Standing to Seek Injunctive Relief.**

Finally, Plaintiffs have standing to seek injunctive relief, or, alternatively, will seek leave to amend. Courts have held that where plaintiffs have demonstrated actual injury, like Plaintiffs here have, demonstrating likely future injury is not always necessary to establish standing for injunctive relief. *Henderson*, 2011 WL 1362188, at *7 (defendant's argument that prospective relief would not redress plaintiffs' injury because plaintiffs are now aware of FDA requirements for label disclosures and allege they will not purchase the products at issue in the future was "unpersuasive" because such a ruling would preclude federal courts from enjoining false advertising under California consumer protection laws); *Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012 WL 5458396, at *3-4 (N.D. Cal. June 14, 2012) ("[d]efendant point[ed] to

statements [where] plaintiffs affirmed they would not have bought [defendant's] products if they had known about the synthetic ingredients, and have not purchased any . . . since," but the court declined to find plaintiffs lacked standing to seek injunctive relief). The court in *Larsen* was "reluctant to embrace a rule of standing that would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice." *Id.* at \*4 (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, No. CV 10-5551, 2002 WL 32985838, at \*7 (C.D. Cal. Oct. 22, 2002)). Additionally, if a plaintiff does not know whether a defendant has corrected a product defect, the plaintiff remains at risk of future injury. *In re General Mills Glyphosate Litig.*, No. 19-2869 (MJD/BRT), 2017 WL 2983877, at \*4 (D. Minn. July 12, 2017) (dismissing for failure to state a claim but holding that plaintiffs had standing to seek injunctive relief). In *General Mills*, the court held that although plaintiffs alleged they would purchase the Nature Valley products at issue again if defendant eliminated the glyphosate to make the "'100% Natural' claim true," because the ingredient list did not include glyphosate, plaintiffs would have no way of knowing if Defendant rectified the issue without first buying the products to test them. *Id.* Accordingly, the court held that a threat of injury still exists to the plaintiffs. *Id.*

Similarly here, finding Plaintiffs do not have standing to seek injunctive relief that prohibits Defendants from continuing to act negligently and make false representations about Loyant would permit Defendants to avoid liability merely because Defendants would not be harming the same rice farmers twice. *Henderson*, 2011 WL 1362188 at \*7; *Larsen*, 2012 WL 5458396, at \*4. Also, like the defect in *In re General Mills*, the defect in Loyant is not an ingredient listed on the label—it simply does not work as it is promised to—so Plaintiffs would not know whether the Defendants made Loyant perform consistent with their affirmations until Plaintiffs purchased it and tested it on their crops. Indeed, since, Plaintiffs purchased Loyant **because of** Defendants' representations

22

about its purpose and performance, which purported to address a significant need for rice farmers, it follows that *if* Loyant performed as it should, Plaintiffs would purchase it to use on their rice crops.

Defendants' argument that Plaintiffs lack standing to seek injunctive relief boils down to an attempt to maintain their wrongful and negligent conduct in promoting and selling Loyant. They cite exclusively to cases finding plaintiffs must allege a future intent to purchase the product at issue, and allege that that Plaintiffs "do not (and cannot) allege that they will sustain any future injury similar to the injury they claim, and there is no conceivable set of facts under which Plaintiffs could do so." Mot. at 19. (citing *In re Simply Orange Juice Mkt. & Sales Practices Litig.*, No. 4:12-md-02361-FSG, 2017 WL 3142095, at *6 (W.D. Mo. July 24, 2016), *vacated* 2018 WL 3589456 (W.D. Mo. Apr. 26, 2018) (in a class certification order the court subsequently vacated, the court held that plaintiffs already on notice of defendants' practices who failed to allege an intent to purchase in the future lacked standing and denied certification under Federal Rule 23(b)(2)) and *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 762 (W.D. Mo. 2015) (same).[6] As *Henderson* and *Larsen* point out, however, this rigid interpretation of Article III standing would gut consumer protection laws and diminish the jurisdiction of the court. *Henderson*, 2011 WL 1362188 at *7; *Larsen*, 2012 WL 5458396, at *4.

---

[6] *See also, Coe*, 2017 WL 476407, at *1-2; *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1034,1036 (S.D. Tex. 2016) (plaintiffs failed to allege they would purchase the plastic valve for their water heater after it malfunctioned in the future); *Meagley v. City of Little Rock*, 639 F.3d 384, 387, 391 (8th Cir. 2011) (plaintiff lacked standing to challenge liability waiver implemented after her accident because she was not required to sign a liability waiver, the waivers were imposed after her accident, and she "she never indicated she would  return to the Zoo" and so could not establish a real and immediate threat); *In re Simply Orange Juice*, 2017 WL 3142095, at *6. Here, if Loyant worked as Defendants purport it should, nothing would preclude Plaintiffs from purchasing it.

Rather, if the court finds Plaintiffs must allege future injury, Plaintiffs will file a motion seeking leave to amend their claims accordingly. *See Coe*, 2017 WL 476407, *1 (because a "willingness to consider a future purchase is sufficient" to confer standing for injunctive relief, the court permitted plaintiffs the opportunity to amend their complaint to cure the deficiency in their pleading). In *Coe*, plaintiffs' first amended complaint alleged that two out of the three plaintiffs would purchase the product at issue again if the product were remedied. *Id.* The court found those two plaintiffs had standing to represent the class, but the third plaintiff did not. *Id.* at *1-2.[7]

Finally, Defendants' unsubstantiated argument that if plaintiffs purchased Loyant in a subsequent crop year they would not suffer "similar" injury because their claims would relate to a "wholly different and discrete annual crop," Mot. at 19, is without merit. Plaintiffs' allegations that Loyant does not work as Defendants promoted, advertised, and marketed it would and the damages Loyant causes to rice crops are not limited to the 2018 or 2019 seasons compared to future seasons. The harms manifesting from applying Loyant to rice crops will continue until Defendants are enjoined from their negligent conduct in producing Loyant in its current form, and Defendants' affirmation about Loyant's performance will continue to be misleading until they are enjoined from making them or they fix Loyant's defects.

---

[7] Defendants cited *Coe* for the proposition that the court dismissed a "putative class's request for injunctive relief because sole named plaintiff lacked standing to seek injunctive relief." Mot. at 13 (citing *Coe*, 2017 WL 476407, at *2). However, only one out of the three plaintiffs in *Coe*, representing a putative class of New York consumers, failed to amend its pleadings to state he would consider purchasing the product in the future, resulting in his and the putative New York class's claims being dismissed. *Coe*, 2017 WL 476407, at *1. This was not, however, the issue before the court: rather, the question the court in *Coe* considered was whether the other two plaintiffs' "allegations that they would purchase [the product] only if  the product matched its labeling is sufficient to confer standing." *Id.* The court held that it was. *Id.* at *2.

The Court should deny Defendants' argument that Plaintiffs lack standing to seek injunctive relief. In the alternative, Plaintiffs are prepared to move to amend their Amended Complaint to allege their willingness to consider purchasing Loyant in the future.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' Motion to dismiss their breach of warranty claims (Counts I and II), MCPA violation claim (Count XIII), Louisiana redhibition claims (Count X), and their LPLA violation claim (Count XI), and find that Plaintiffs have standing to seek injunctive relief.


Respectfully submitted,                    Date:  August 6, 2020

                                           /s/ *James Pizzirusso*_____

                                           James Pizzirusso Hausfeld LLP
                                           1700 K St., NW, Ste 650
                                           Washington, DC 20006
                                           Telephone:  202-540-7200
                                           Facsimile:   202-540-7201
                                           E-mail:       jpizzirusso@hausfeld.com

                                           Kimberly A. Fetsick
                                           Hausfeld LLP
                                           33 Whitehall Street
                                           14th Floor
                                           New York, New York 10004
                                           Telephone:  646-357-1100
                                           Facsimile:   212-202-4322
                                           E-Mail:       kfetsick@hausfeld.com

                                           Clayton Smaistrla (Arkansas Bar No. 2012299)
                                           Saucier & Smaistrla PLLC
                                           200 Concord Plaza Drive, Suite 750
                                           San Antonio, TX 78216
                                           Telephone:  210-901-8112
                                           Facsimile:   210-338-8916
                                           Email:         clayton@s2lawfirm.com

Stephen B. Murray, Jr.
Arthur M. Murray
Jessica W. Hayes
Murray Law Firm
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone:  504-525-8100
Facsimile:  504-584-5249
E-mail:      smurrajr@murray-lawfirm.com
             amurray@murray-lawfirm.com
             jhayes@murray-lawfirm.com

Charles A. Banks (Arkansas Bar No. 73004)
Banks Law Firm
711 West Third Street
Little Rock, AR 72201
Telephone:  201-280-0100
Facsimile:  501-325-0565
E-mail:      cbanks@bankslawfirm.us