**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**BOOTHE FARMS, INC.; BIG RISK FARMS, INC.;**
**JEFFREY D. BOOTHE; TERRY BOOTHE;**
**ADAM BOOTHE; RINEHART FAMILY FARMS II;**
**MM FAMILY FARMS; AND JASON R. HANKS**
**individually and on behalf of all those**
**similarly situated**                                          **PLAINTIFFS**

**v.          No.: 3:19-cv-00264-DPM**

**THE DOW CHEMICAL CO.;**
**DOW AGROSCIENCES LLC; CORTEVA, INC.;**
**and E. I. DU PONT DE NEMOURS AND CO.**                   **DEFENDANTS**


**STIPULATED PROTOCOL**
**FOR THE PRODUCTION OF DOCUMENTS AND ESI**

The parties in the above-captioned litigation (collectively, "the Parties"), by and through

their respective counsel, have jointly stipulated to the terms of this Stipulated Protocol for the

Production of Documents and Electronically Stored Information (the "ESI Protocol"):

**I.          SCOPE**

A.          Federal Rule of Civil Procedure 34 permits the Parties to specify the form or

forms in which electronically stored information ("ESI") is to be produced. Pursuant to Rule 34,

this ESI Protocol shall govern the production of hard copy documents and other physical

materials and ESI (together, "Documents") by the Parties in the above-captioned matter (the

"Litigation").

B.          The ESI Protocol does not alter the Parties' obligations to comply with the

applicable Federal Rules of Civil Procedure and any applicable local rules regarding the

production of Documents and ESI.

C.          The Parties incorporate the provisions of the Stipulated General Protective Order

(ECF No. 67).

      D.      Nothing in this ESI Protocol establishes any agreement regarding the subject matter or scope of discovery in this Litigation, or the relevance, authenticity, or admissibility of any Documents or ESI.

      E.      Nothing in this ESI Protocol shall be interpreted to require production of Documents or ESI protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, or any other legally recognized protection or privilege in this jurisdiction. The Parties do not waive any objections to the production, discoverability, or confidentiality of Documents, ESI, or any other discovery materials, including but not limited to: objections regarding the proportionality of the discovery request or the burden, overbreadth, or relevance of Documents, ESI, or any other discovery materials.

      F.      The provisions of this ESI Protocol may be modified at any time by written stipulation of the Parties, or upon order of the Court for good cause shown.

## II.    IDENTIFICATION OF CUSTODIANS AND SEARCH METHODOLOGY

      A.      The Parties shall meet and confer to attempt to reach agreement on custodians likely to have responsive Documents and their data sources from which Documents will be collected, searched and produced as well as non-custodial sources of data that are likely to contain responsive Documents from which Documents will be collected, searched, and produced. Producing parties shall make reasonable disclosures about their personnel, third-party agents, and ESI sources and systems and hard copy Document sources and systems necessary to provide the requesting parties with information necessary to evaluate appropriate custodians and sources of relevant Documents for search.

      The Parties agree that responsive Documents will be collected/produced from

custodial and non-custodial data sources agreed upon by the Parties or ordered by the Court. If the Parties cannot reach agreement on custodians and custodian and non-custodial data sources to be searched, they shall bring their dispute to the Court for resolution.

The Parties agree to negotiate in good faith if, at any time during the Litigation, a party believes it necessary to add or remove custodians, and/or data sources from those agreed upon by the Parties. *, or both* ~DPMJ.~

B.      The Parties agree to meet and confer to reach agreement about the methods they will use to (1) search for responsive Documents and (2) filter out likely non-responsive ESI. The Parties will cooperate to reach agreement on appropriate search methodology and criteria, including the potential use of computer-assisted search methodologies and other analytics-based search and filtering tools, as well as how the effectiveness of the search methodologies will be validated. If the Parties cannot reach agreement on a search methodology and validation protocol, they shall bring their dispute to the Court for resolution.

C.      Regardless of the ESI search methodology used, searches shall be run across all members of a Document family. The Parties will not exclude non-responsive members of document families in which one or more document is responsive.

D.      The Parties will reach a separate written agreement as to search methodology.

E.      Should a party wish to file a copy of the aforementioned written agreement, it must be filed under seal in accordance with the applicable procedures for this Court.

### III.    DOCUMENT PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS

A.      **Paper Documents:** Records maintained in paper form will be scanned into electronic form from paper Documents in the following format:

1.      Document images will be provided as single-page TIFF format, using Group 4 compression with at least 300 dots per inch ("dpi") resolution and 8 ½ x 11 inch page size, except for Documents requiring higher resolution or different page size. Original Document orientation shall be maintained.

2.      Color Documents will be imaged to retain color.

3.      Each image file will have a unique file name which shall be the Bates number of the page.

4.      TIFF images of hard copy Documents shall be run through an Optical Character Recognition ("OCR") Software. The OCR Software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. The OCR text will be provided in a text file at the Document level according to the specifications for text files in Part III.B of this ESI Protocol.

5.      When scanning paper Documents, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records (i.e., paper Documents should be logically unitized). In the case of an organized compilation of separate Documents—for example, a binder containing several separate Documents behind numbered tabs—the Document behind each tab should be scanned separately, but the relationship among the Documents in the compilation should be reflected in the proper coding of the beginning and ending Document and attachment fields.

6.      The Parties agree to provide the metadata fields as described in Appendix A.

7.      The Parties shall meet and confer regarding the rendering of text searchable for hard copy Documents after the Parties have made a reasonable assessment of the

volume and nature of hard copy Documents that may require searching for responsiveness.

      **B.**    **Unstructured Electronically Stored Information**: The Parties will produce ESI in TIFF format according to the following specifications:

      1.    ESI will be produced as single-page TIFF format, using Group 4 compression with at least 300 dots per inch ("dpi") resolution and 8 ½ x 11 inch page size, except for Documents requiring higher resolution or different page size. The requesting party retains the right to request a TIFF image in a higher resolution or larger page size if necessary to render the image legible or reasonably usable.

      2.    Each electronic Document shall be accompanied by a corresponding single, multipage text file containing all of the text that is extracted from the electronic file directly from the native file (extracted text file). The exception to this will be redacted Documents and hard copy Documents, which will substitute OCR text for extracted text, as discussed herein. If it is not technically possible to extract text from the native file, the text for each ESI item will be generated by providing OCR text.

      The file name of each extracted text file must be identical to that of the first image page of its corresponding Document, followed by .txt. File names should not contain any special characters or embedded spaces.

      3.    Each page of a Document will be electronically saved into an image file.

      4.    The Parties agree to produce spreadsheet-type files (e.g., Excel), audio and video files, computer presentation-type files (e.g., PowerPoint), and all other files that are not reasonably useable when converted to TIFF format in native format. If data in structured data sources (e.g., databases) is responsive and cannot be exported in a useable format, or the Parties disagree about what is "useable," the Parties shall meet and confer on the format and content of the production from such structured data sources.

Native Documents containing redactions shall be produced in TIFF format with OCR text (see Sections III(B)(2), (11)). All other file types shall be produced in TIFF format unless otherwise agreed upon. Per the Parties' prior discussions, if text or similar IMS communications of certain custodians are identified as potentially responsive, the Parties will meet and confer regarding whether and to what extent such communications will be collected and the production format. This paragraph is not intended to address whether or not text or similar IMS communications are responsive and addresses only the Parties' approach to production.

A receiving party may request production of certain Documents in native format by providing (1) a list of the Bates numbers of Documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such Documents in native format. The producing party shall not unreasonably deny such requests. Such productions shall conform with the specifications in Appendix B.

Any file produced in native format need not be imaged. Instead, a single page placeholder image shall be produced that indicates the file was produced in native format and contains the bates number of the corresponding file and any confidentiality designation. Each native file produced shall also include the confidentiality designation and bates number as provided on the placeholder image in the file name.

A "NativeLink" entry for each Document being produced in native format should be included in the data load file indicating the relative file path to each native file on the Production Media as provided in Appendix B. Native Files should be produced with extracted text and applicable metadata fields as set forth in Appendices A and B.

5.     Parent-child relationships (the association between family members such as an email and its attachments, a word Document and any attachments, a spreadsheet and embedded files) will be preserved, and the link between parents and children shall be maintained.

Family Documents will be consecutively produced with the children directly following the parent in the order of the original Document, and children will be mapped to their parents using attachment range and BegAttach/EndAttach metadata fields designating the beginning and end of each such attachment identified in Appendix A.

6.      The Parties shall globally de-duplicate (i.e., horizontally across custodians) ESI by family only (i.e., if a standalone Document is a duplicate of a Document that is part of a family, both the entire family and the standalone Document are produced, and if identical child Documents have unique parents, both parents shall be produced with their attachments). The Parties shall identify ESI duplicates by using industry standard MD5 or SHA-1 algorithms to create and compare hash values for exact matches only. Paper Documents shall not be deduplicated. Any other methodology for identification of duplicates must be discussed with the receiving party and approved in writing before implementation.

An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical.

Custodians who were in possession of a de-duplicated Document and the directory structure where the custodian stored the de-duplicated Document must be identified in the AllCustodian and CustodianOtherDirectory metadata fields specified in Appendix A. In the event of a rolling production, the Parties will produce an update of the AllCustodian and CustodianOtherDirectory metadata fields every 30 days for previously produced Documents and will not produce duplicates.

7.      Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced even if part of families.

8.     The Parties will make non-text-searchable Documents text-searchable (by OCR scanning, for example). To the extent Documents already exist in text-searchable format independent of this Litigation or are converted to text-searchable format for use in this Litigation (including for use by the producing party), then such Documents will be produced in the same text-searchable format at no cost to the receiving party. The searchable text shall be provided in the text files produced with the Document.

9.     The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this ESI Protocol (or that passwords are supplied to the receiving party if the Document is produced in native format). To the extent encrypted or password protected Documents that are part of a responsive family cannot be successfully decrypted, the producing party agrees to: (a) produce a slipsheet for each encrypted or password protected Document that cannot be successfully processed indicating that the Document cannot be decrypted; (b) populate the ExceptionReasons metadata field required in Appendix A to indicate the Document could not be decrypted.

10.     Any media used for production of Documents will be encrypted by the producing party. Production volumes may be produced via SFTP or other electronic transfer system, without a separate agreement. The producing party will contemporaneously transmit the encryption key or password to the receiving party under separate cover.

If productions are made using hard media, each piece of hard media shall include a unique identifying label providing the identity of the producing party, the case number, the date of the production of Documents on the hard media, the disk number (1 of X, 2 of X, etc.) if applicable, production volume, and the Bates number ranges of the Documents in the

production. For productions delivered via a secure file transfer utility, the producing party shall provide a letter or email communication containing the information that would otherwise be on the label.

Each production volume shall limit directory contents to approximately 5,000 files per folder.

11. For any file that experiences technical issues that prevent the file from being converted to TIFF without error or some other issue that renders the file unreviewable in TIFF, a slipsheet stating the technical issue will be produced. The Parties will take all reasonable efforts to convert data from a proprietary database or licensed software system to a useable format and will meet and confer on the format for production. If the technical issues render the file un-viewable or do not give the producing party an opportunity to review the content of the file, the file will not be produced, and a log will be created of such file types. This log is only contemplated for un-viewable files with technical issues such as .thumb or .dat files that cannot be converted for review.

12. The Parties agree to provide the metadata fields as described in Appendix A. The Parties agree to meet and confer as needed regarding metadata fields in the event the metadata fields are not reasonably available.

13. All images must be assigned a Bates number that shall always: (1) be unique across the entire Document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no embedded spaces or special characters other than underscores, ~~and/or~~ *, or both* hyphens, (4) be sequential within a given Document and across a family, and (5) be of a consistent font type and size. If one or more Bates numbers is skipped in a production, the producing party will so note in a cover letter accompanying the production or

in a privilege log.

14.     When collecting and converting ESI from its native format into TIFF image files prior to production, the producing party shall do the following:

(a) Maintain all tracked changes, so that all changes to a Document are evident, except for portions that are redacted for privilege or work product.

(b) Produce all Word Documents to include and show field codes for auto-date and auto-time fields.

(c) Ensure comments shall remain or be made visible, except for portions that are redacted for privilege or work product.

(d) Make Presenter notes within a presentation visible except for portions that are redacted for privilege or work product.

(e) For spreadsheets that may be converted to TIFF under this ESI Protocol for purposes of redaction, prior to conversion, the producing party shall display all hidden columns or rows, hidden text or worksheets (i.e., shall force on hidden columns or rows, hidden work sheets); adjust column widths so that numbers do not appear as "########"; ensure that column and row headings print and are repeated on each page; ensure that the tab name appears in the header or footer of the Document; process comments so that they are produced at the end of the spreadsheet; process spreadsheets so that they print across then down and set page breaks for printing to ensure the spreadsheet is understandable when converted.

(g) ESI shall be processed so as to maintain the date/time shown in the Document as it was last saved by the custodian or end user, not the date of collection or

processing (i.e., shall force off Auto Date).

15.    Prior to search, compression file types or containers (e.g., .CAB, .GZ, .RAR. .ZIP, .PST), shall be decompressed to ensure that a compressed file within a compressed file are decompressed into the lowest possible compression resulting in individual folders, and/or files, or both. Original compression files and container files need not be produced, provided the responsive content files are produced in accordance with the specifications of this ESI Protocol.

16.    Embedded ESI Documents (e.g., a spreadsheet embedded within a word processing Document) will be extracted, produced as an independent Document, and related back to the respective top-level parent Document (e.g., standalone file, email message, etc.) via the BegAttach and EndAttach fields referenced in Appendix A.

17.    If any member of a Document family is responsive, the entire Document family shall be produced.

18.    A producing party may not use email thread suppression to exclude responsive email from their production.

C.    **Load Files and Production Volume Directories**. Hard copy Documents scanned to TIFFs, TIFF files, and Native Files shall be produced with the load files and directories in accord with the requirements of Appendix B.

D.    **Redacted and Withheld Files**:

1.    **Redacted Files**. Extracted text will not be provided for ESI that has been redacted for privilege or work-product protection because the extracted text would reveal the protected information. Instead, the files shall be processed into TIFF format, redacted, run through an OCR process to capture the unredacted text only, and the OCR text exchanged in the text file in lieu of the original extracted text. The text files shall indicate where the redactions

were made, e.g., with the notation "REDACTED." The full text shall be provided on a Document-level basis according to the specifications in Appendix B. The portion of the redacted text shall be clearly identified on the face of the TIFF image by redaction legends burned into the Document.

If Documents required to be produced in native format must be redacted, the producing party may produce the redacted Document in TIFF format according to the specifications herein only if the Document is reasonably usable after conversion. Such TIFFs shall be produced and redacted consistent with the specifications in this protocol and the foregoing paragraph and in accord with Section III(B)(14)(d). If conversion to TIFF renders the Document not reasonably usable, the Parties shall meet and confer on the appropriate process for redaction of the native file.

The Redaction metadata field identified in Appendix A should be populated for all redacted Documents.

2.      **Withheld Family Members**. When one or more but fewer than all Document family members are withheld for privilege or work-product protection, a Bates-stamped, TIFF-image placeholder will be produced in lieu of the withheld family Document and shall be in the same position in the family as if the Document had been produced.

3.      **Replacement Productions**. If a producing party subsequently produces a Document that had been withheld and place-holdered or produced but redacted, the replacement Document shall be produced according to the requirements of this ESI Protocol and shall include load files necessary to link the replacement file to other previously produced Document family members. Where the replacement Document occupies more pages than the original placeholder image for the file, the producing party shall apply an appropriate numerical suffix to

the Bates number of the file (e.g., ABC000123.001 to ABC000123.005). If reproduction according to these specifications is not practicable, the producing party and the requesting party shall meet and confer.

### IV.    STRUCTURED DATA

Where a discovery request requires production of structured data, in lieu of producing the native database or TIFF images of database content, the producing party shall identify such structured data sources within a reasonable period after receiving the discovery request, and the requesting party and producing party shall meet and confer on the content and format of a data extraction from such structured data source. The requesting party and producing party shall, in good faith, make disclosures necessary to ensure the meet and confer discussions regarding content and format of the production are meaningful.

### V.    DOCUMENTS PROTECTED FROM DISCOVERY

A.    **Non-Waiver of Protection**: Pursuant to Federal Rule of Evidence 502(d), the production of Documents protected from disclosure by the attorney-client privilege or the work-product doctrine shall not constitute a waiver of the privilege or work-product protection with respect to those Documents or the subject matter of those Documents in this case or any other federal or state proceeding. Nothing in this paragraph shall require a party to produce Documents that are protected from disclosure by the attorney-client privilege or the work-product doctrine.

Nothing in this ESI Protocol is intended to or shall serve to limit a party's right to conduct a review of Documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

B.    **Privilege Logs**: The Parties shall provide privilege logs with the following metadata and information:

(i)      Bates Number or Control ID (as applicable);

(ii)     Document Type;

(iii)    Date;

(iv)     Author;

(v)      To;

(vi)     From;

(vii)    CC;

(viii)   BCC;

(ix)     Subject;

(x)      Custodian(s);

(xi)     Redact or Withheld to denote the extent to which the document is withheld in its entirety or redacted;

(xii)    Privilege Type;

(xiii)   Privilege Description;

(xiv)    Legal Source; and

(xv)     Parent or Attachment (to identify the extent to which the document is a parent or an attachment).

The privilege log will identify the Legal Source associated with each Document/entry. A Legal Source key will be provided indicating the Legal Sources' title and employer. To the extent any of the foregoing fields can be compiled from the objective metadata corresponding to the document, such data should be used to populate the required fields.

This paragraph is not intended to address whether or not Documents are privileged and addresses only what fields need to be placed on a log. This paragraph does not foreclose a

challenge by any party to whether communications are privileged.

C.     **Clawback of Documents**: Any party that inadvertently discloses or produces a Document or ESI that it considers privileged or otherwise protected from discovery may seek to recover such Document pursuant to the following procedure:

1.     The party that inadvertently discloses or produces a Document that it considers privileged or otherwise protected from discovery will give written notice to the receiving party, identifying the Document or ESI in question, the asserted privilege or protection, and the grounds therefor.

2.     Upon receipt of notice of the assertion of privilege or protection over produced Documents or ESI, the receiving party will:

(a) to whatever extent it contests the assertion of privilege or protection, promptly so notify the producing party, and maintain the contested Documents in confidence pending resolution of the contest by the Parties or the Court (the receiving party may not use the document further except to challenge any privilege or protection assertions); and

(b) to whatever extent the receiving party does not contest the assertion of privilege or protection, the receiving party shall notify the producing party that it has returned or destroyed the applicable Document(s) and has made reasonably diligent efforts to identify and destroy each copy thereof and all information derived therefrom (normally reasonable diligence will not include disaster recovery media).

3.     Limitations:

(a) Notwithstanding paragraphs IV(A) and IV(C) of this ESI Protocol, Federal

Rule of Evidence 502(a) applies in this Litigation.

(b) A producing party may claw back a Document used by another party: (i) in a live deposition or pre-trial proceeding only if the privilege or protection is first claimed contemporaneously with the introduction of the Document at the deposition or proceeding and the written clawback notice is provided within seven (7) days of the deposition or proceeding; or (ii) in a Court filing only if it does so within seven (7) calendar days of being served with that filing.

(c) Should a receiving party have concern about the number or timing of clawbacks by a producing party, the Parties shall meet and confer in good faith to discuss the reason for and scope of the clawbacks. If the Parties cannot reach an agreement as to the scope of clawbacks, the receiving party may bring the issue to the attention of the Court by motion and may seek any and all remedies available pursuant to the Federal Rules of Civil Procedure, which permit the award of attorneys' fees under Rule 37(b)(2)(C), and any applicable local rules. A party challenging any clawback may assert that: (1) the production was not inadvertent; (2) the producing party did not take reasonable steps to prevent disclosure or rectify the error; and/or (3) the clawback is abusive.

4.     In the event of a contested assertion of privilege or protection over produced Documents that cannot be resolved after meeting and conferring in good faith, the producing ~~party~~ *parties* may bring the contest to the attention of the Court by ~~motion. The receiving party~~ *joint report. They* may use the Document (under seal) in ~~contesting such a motion.~~ *presenting their report.*   *NPMJ.*

## V.     THIRD-PARTY ESI DISCOVERY

A.     The ESI Protocol shall govern productions made by any third party who is subpoenaed in this Litigation, unless a different format is requested by the issuing party or

agreed to by the issuing party and the third party. Accordingly, this ESI Protocol shall be attached to any subpoena issued in this Litigation unless the issuing party requests a different format.

B.     The issuing party will produce any Documents obtained pursuant to a subpoena to all other parties. Any Documents the issuing party does not intend to process for its own use may be disseminated the Parties in the format in which such Documents are received by the issuing party. If the issuing party or receiving party subsequently processes any such Documents, the party processing the Documents will produce those processed Documents to all other parties.

C.     If the non-party production is not Bates-stamped, the issuing party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other parties, as well as any confidentiality designations made by any party or non-party under the General Protective Order or otherwise.

D.     The Parties may decide to meet and confer regarding cost sharing arrangements for third party discovery but are under no obligation to do so.

So Ordered.

_WPMarshall Jr._

D.P. Marshall Jr.
United States District Judge

_9 February 2021_

## **APPENDIX A**

The Parties agree to provide the metadata fields as described below. The Parties agree to meet and confer as needed regarding metadata fields.

| Metadata Field | Description | Required For | | | |
|---|---|---|---|---|---|
| | | Emails | Calendars | Other ESI[1] | Paper Documents |
| **Bates Begin** | Beginning Bates number – The Bates number for the first page of the Document e.g., Prefix-0000000001 | X | X | X | X |
| **Bates End** | Ending Bates number – The Bates number for the last page of the Document e.g., Prefix-0000000002 | X | X | X | X |
| **Bates Begin Attach** | The Beginning Bates number of the first Document in a Document family range. Documents that are part of Document families, i.e., containing parents and attachments, should receive a value. E.g., Prefix-0000000001 | X | X | X | X |
| **Bates End Attach** | Ending Bates number of the last Document in attachment range in a Document Family range. Documents that are part of Document Families, i.e., containing parents or attachments, should receive a value. e.g., Prefix-0000000004 | X | X | X | X |
| **AttachRange** | Bates number of the first page of the parent item to the Bates number of the last page of the last attachment "child" item. (e.g., ABC000000001-ABC000000010)  Should be left empty if the file is not part of a family. | X | X | X | X |
| **Attach Count** | The number of attachments that are indicated in the Document metadata. | X | X | X | X |
| **To** | All recipients that were included on the "To" or "Attendee" line of the e-mail or | X | X | | |

---

[1] Other ESI includes attachments to email.

| | | | | | |
|---|---|---|---|---|---|
| | calendar invitation. | | | | |
| **From** | From or Sender field extracted from the metadata of an email or calendar invitation | X | X | | |
| **Author** | Author field extracted from the metadata of non-email ESI | | | X | |
| **Email CC** | CC field extracted from an email | X | | | |
| **Email BCC** | BCC field extracted from an email | X | | | |
| **Subject** | Subject line extracted from the metadata of an e-mail or calendar item | X | X | | |
| **Confidentiality Designation** | Confidentiality designation, if any, of the Document assigned under any Protective Order. Populated with specific designation; if NO designation, field should be left blank. | X | X | X | X |
| **Custodian** | Name of the natural person or other source that had possession of the Document. In the case of deduplicated ESI, the natural person or source that had possession of the production copy. In format FirstName, LastName. | X | X | X | X |
| **AllCustodian** | Name of all custodians who possessed the Document including deduplicated copies that were not produced, In format FirstName, LastName. | X | X | X | |
| **Document Title** | Title field extracted from the metadata of non-email ESI ,e.g., June 6, 2020 Press Release | | | X | |
| **File Name** | File name of original native Document, e.g., 2020-06-10_Press Release.doc\n\nMust be populated for all Documents, including parents and children | X | | X | |
| **FileSize** | The size of the file in bytes. E.g., 146.6 mb | X | X | X | X |
| **File Type** | Application type , e.g., Word | X | X | X | |
| **RecordType** | To indicate if a Hard Copy Document, e-doc, email, calendar appointment | X | X | X | X |
| **CustodianOther Directory** | The file path/directory path correlating to the unproduced duplicate copies of files and the names of unproduced duplicate copies of files; in format: custodian last name, custodian first name, directory path | X | X | X | |
| **Document Extension** | The extension of the original native file. E.g., .xlsx, .doc, .ppt, etc. | X | X | X | |
| **Date Created –** | Date the Document was created. | X | X | X | |

| | | | | | |
|---|---|---|---|---|---|
| MM/DD/YYYY format | | | | | |
| **Time Created** hh:mm:ss format | Time the Document was created. | X | X | X | |
| **Last Modified Date –** MM/DD/YYYY format | Date the Document was last modified. | | | X | |
| **Last Modified Time** hh:mm:ss format | Time the Document was last modified. | | | X | |
| **Last Modified By** | The name of the last person who modified the Document. | | | X | |
| **Date Sent –** MM/DD/YYYY format | Date an email or calendar item was sent | X | X | | |
| **Received Date –** MM/DD/YYYY format | Date an email or calendar item was received | X | X | | |
| **Conversation Index** | Unique alphanumeric identifier for an email thread, which may be populated by the email client for each outgoing message. | X | | | |
| **Hash** | MD5 or SHA-1 Hash Value | X | X | X | |
| **Production Image Count** | Number of pages in the Document | X | | X | X |
| **Redacted** | User-generated field that will indicate redactions. Use "Y" to indicate redactions, otherwise, blank | X | | X | X |
| **Confidentiality** | Indicates the confidentiality designation, if any, assigned to the Document under any Protective Order in the Action. Field should be populated with the specific designation and if no designation, left blank. | X | X | X | X |
| **Source Party** | The producing party. | X | X | X | X |
| **Production Volume** | The production volume name and number | X | | X | X |
| **Exception Reasons** | Populate if the Document was encrypted and could not be decrypted | | | X | |
| **TextLink** | Relative path to and filename of the extracted text for the produced ESI in the TEXT directory | X | X | X | |
| **NativeLink** | Relative path to and filename of produced native file in the NATIVES directory | X | X | X | |

**Appendix B**

1. <u>**Required Load Files**</u>

All productions shall include two load files: an Image Cross Reference File and a Data File. Load Files must be produced both for Documents produced as TIFF images and Documents produced in Native Format.

- **Image Cross Reference File:** Productions of TIFF images (including native slip sheets and placeholders for family members withheld for privilege) must be accompanied by an image cross reference file that identifies the Document breaks for image files (where applicable) on at least a monthly basis. Acceptable formats for the cross-reference files are .log and .opt.

    o There shall be one row in the load file for every TIFF image

    o The file will be comma delimited file and consist of seven fields per Document

        ▪ The format for the file is as follows: ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

            • ImageID: The unique designation that Concordance and Opticon use to identify an image. ImageID key shall be named the same as the Bates number of the page

            • VolumeLabel: The name of the volume.

            • ImageFilePath: The full path to the image file.

            • DocumentBreak: Files that are the first page of a logical Documents shall include a Y and subsequent pages of all Documents will include a blank in the appropriate position.

            • FolderBreak: Leave empty.

            • BoxBreak: Leave empty.

            • PageCount: Number of pages in the Document.

    o Sample data:

        PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2
        PROD00000002, VOL001,E:\100\ MT00000002.TIF,,,, PROD00000003,
        VOL001,E:\100\ MT00000003.TIF,Y,,,4 PROD00000004,
        VOL001,E:\100\ MT00000004.TIF,,,, PROD00000005, VOL001,E:\100\

MT00000005.TIF,,,, PROD00000006, VOL001,E:\100\
MT00000006.TIF,,,,

- o The name of the image load file will mirror the name of the delivery volume (e.g., WawaProdVol20200401-001.OPT where the volume name is WawaProdVol20200401-001)

- o The image cross reference file may not span across media.

- **Data Load File (.DAT):** Each production must be accompanied a delimited text file in Concordance .DAT format that contains all fielded data for the production, including the beginning bates number for each record, the relative path to the text files for each record, and, for native files, the relative path to the native file for each record.

  - ▪ The name of the data load file will mirror the name of the delivery volume (e.g., WawaProdVol20200401-001.DAT where the volume name is WawaProdVol20200401-001)

  - ▪ The first record should contain the field names in the same order of the data is arranged on subsequent lines.

  - ▪ All available record metadata identified in Appendix B shall be extracted and produced for every electronic Document produced, including native files.

  - ▪ All date fields shall be produced in mm/dd/yyyy format.

  - ▪ All time fields will be produced in hh:mm:ss format.

  - ▪ All attachments shall sequentially follow the parent Document.

  - ▪ A carriage return should be used to indicate the start of a new record.

  - ▪ The Data File shall use standard Concordance delimiters: Field Separator: ASCII character 20 ("¶"); Quote: ASCII character 254 ("þ"); and New Line: ASCII character 174 ("®").

  - ▪ The first line of the .DAT file shall contain the field names arranged in the same order as the data is arranged in subsequent lines.

2. **Required Directories:** Every production volume must have the following directories:

   - **Images** – TIFF image files shall be provided in a separate \IMAGES\ directory containing the images. The name of each image file shall match the Bates number of the page.

   - **Text** (.TXT) - Extracted Text (or in the case of scanned hard copy Documents, OCR) files shall be provided in a separate \TEXT\ directory containing Document

level text files (i.e., a single extracted text file per Document). Text must not be produced in the .DAT file. The text files must be named the same as the Bates number of the first page of the Document (if a TIFF image) or the same as the Bates number assigned to the native file.

- **Natives** – The original native files shall be provided in a separate \NATIVES\ directory. The native files must be named the same as the Bates number assigned to the Document.